UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WILLIAM HAROLD DOTHARD,

        Petitioner,

                                    CASE NO. 2:13-CV-15217

v.                              JUDGE DAVID M. LAWSON
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

DUNCAN MacLAREN,

        Respondent.[1]

_____/

## REPORT AND RECOMMENDATION ON (1) PETITIONER'S HABEAS APPLICATION (docket #1) and (2) PETITIONER'S MOTION FOR EVIDENTIARY HEARING (docket #10)

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    D.    *Sufficiency/Weight of the Evidence (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        1.    *Weight of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        2.    *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    E.    *Evidentiary Claim (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    F.    *Counsel Claims (Claims II and III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        1.    *Attorney-Client Breakdown (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        2.    *Ineffective Assistance of Counsel (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    G.    *Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    H.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 37
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

[1]By Order entered this date, Duncan MacLaren has been substituted in place of Willie Smith as the proper respondent in this action.

2.       *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
I.       *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
III.      NOTICE TO PARTIES REGARDING OBJECTIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

\*       \*       \*       \*       \*

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner's motion for evidentiary hearing.  The Court should also deny petitioner a certificate of appealability.

II.     <u>REPORT</u>:

A.      *Procedural History*

1.      Petitioner William Harold Dothard is a state prisoner, currently confined at the Kinross Correctional Facility in Kincheloe, Michigan.

2.      On April 20, 2010, petitioner was convicted of first degree felony murder, MICH. COMP. LAWS § 750.316(1)(b); armed robbery, MICH. COMP. LAWS § 750.529; first degree home invasion, MICH. COMP. LAWS § 750.110a(2); and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On May 5, 2010, he was sentenced to a mandatory term of life imprisonment without possibility of parole on the murder conviction, concurrent terms of 11-20 years' imprisonment each on the robbery and home invasion convictions, and a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claim:

I.      THESE CONVICTIONS MUST BE REVERSED BECAUSE THE
        EVIDENCE WAS LEGALLY INSUFFICIENT TO PROVE BEYOND A
        REASONABLE DOUBT THAT MR. DOTHARD HAD THE MALICE
        NECESSARY TO SUPPORT A CONVICTION FOR THE MURDER OF
        JAMAL HARPER; ALL OF THE CONVICTIONS WERE CONTRARY TO

THE GREAT WEIGHT OF THE EVIDENCE.

After petitioner was appointed substitute counsel, petitioner filed a supplement brief raising the following additional claims:

    I.    DEFENDANT IS ENTITLED TO A NEW TRIAL BECAUSE THERE WAS A BREAKDOWN IN THE RELATIONSHIP BETWEEN DEFENDANT AND DEFENSE COUNSEL, AND BECAUSE THE TRIAL JUDGE FAILED TO CONDUCT AN ADEQUATE INQUIRY INTO THE BREAKDOWN.

    II.    DEFENSE TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO OBJECT TO THE PROSECUTOR VOUCHING FOR CO-DEFENDANTS' CREDIBILITY AS PROSECUTION WITNESSES BY ELICITING THAT THE PROSECUTOR HAD ALREADY ALLOWED THE CO-DEFENDANTS TO PLEAD GUILTY BEFORE TRIAL IN EXCHANGE FOR "TRUTHFUL" TESTIMONY.

    III.    THE TRIAL COURT VIOLATED THE RULES OF EVIDENCE AND MR. DOTHARD'S DUE PROCESS CLAUSE RIGHT TO A FAIR TRIAL BY ALLOWING THE PROSECUTION TO IMPEACH THE STAR DEFENSE WITNESS WITH GUILTY PLEAS TO UNRELATED MURDER CONVICTIONS, AS WELL AS CONVICTIONS FOR SHOOTING AT THE POLICE DURING A HOSTAGE SITUATION IN DEARBORN.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Grant*, No. 298711, 2012 WL 2402053 (Mich. Ct. App. June 26, 2012) (per curiam).

    4.    Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Grant*, 493 Mich. 918, 823 N.W.2d 596 (2012).

    5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on December 23, 2013. As grounds for the writ of habeas corpus, he raises the four claims that he raised in the state courts.

    6.    Respondent filed his answer on July 2, 2014. He contends that a portion of

petitioner's first claim is barred by petitioner's procedural default in the state courts, and that all of petitioner's claims are without merit.

       7.      Petitioner filed a combined motion for evidentiary hearing and reply to respondent's answer on July 23, 2014.

B.    *Factual Background Underlying Petitioner's Conviction*

      Petitioner's convictions arise from the a robbery during which Jamal Harper was killed. Petitioner was tried jointly, before a separate jury, with his codefendant Dreshawn Grant.[2]  The evidence adduced at trial was accurately summarized by the Michigan Court of Appeals:

> Defendants' convictions arise from the shooting death of 29–year–old Jamal Harper during the commission of a robbery. Three others were also charged in the offense, Elesha Fullwood, Treisa Lyles, and Dione Wade. Lyles and Fullwood both pleaded guilty to second-degree murder pursuant to plea agreements in which they agreed to testify truthfully for the prosecution. Wade was charged with first-degree premeditated murder, but pleaded guilty to second-degree murder and felony-firearm pursuant to a plea agreement. Wade was called as a defense witness by defendant Dothard.
>
> Testimony at trial indicated that Lyles, Fullwood, Wade, and defendants Grant and Dothard were all at a house together when someone raised the idea of committing a robbery. According to Lyles, defendant Grant, who was Lyles's boyfriend, identified Jamal Harper as a potential target. Defendant Grant had previously found Harper's telephone number in Lyles's purse and he threatened to end his relationship with Lyles if she did not agree to contact Harper to arrange to meet. Lyles thereafter contacted Harper, who later picked up Lyles and Fullwood and brought them back to his house. According to both Lyles and Fullwood, at some point later that evening, Wade and defendant Dothard both entered Harper's house at gunpoint and announced a robbery. Wade and defendant Dothard later brought Harper to the basement of his house where he was eventually shot to death, apparently by Wade. The women and defendant Dothard then removed several garbage bags of clothing, jewelry, and other items from Harper's house, and the group returned to the house where they were at previously and divided up the stolen property. According to Lyles and other witnesses, defendant Grant was present at the house, and Lyles and another witness both testified that Grant received a share of the

---

    [2]Grant was convicted of first degree home invasion, but was acquitted of the felony murder and armed robbery charges.

stolen property.

        Wade testified at trial on behalf of defendant Dothard. Wade testified that, contrary to the testimony of other witnesses, defendant Dothard was not involved in the planning or commission of the offense.

*Grant*, 2012 WL 2402053, at *1.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

        (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
        (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
        (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.  As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).  Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court

decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Sufficiency/Weight of the Evidence (Claim I)*

In his first claim, petitioner contends that there was insufficient evident to prove his guilt beyond a reasonable doubt on the felony murder conviction, and that all of his convictions are against the great weight of the evidence.  The Court should conclude that petitioner is not entitled

to habeas relief on these claims.

1.    *Weight of the Evidence*

To the extent that petitioner argues that he is entitled to habeas relief because the jury's verdict was against the great weight of the evidence, his claim is not cognizable.  It is well established that habeas review is not available to correct errors of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws.").  The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia, infra*.  Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review.  *See Douglas v. Hendricks*, 236 F. Supp. 2d 412, 435-36 (D.N.J.  2002); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) (Friedman, J.); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); *cf. Tibbs v. Florida*, 457 U.S. 31, 44 (1982) (noting in a different context that "trial and appellate judges commonly distinguish between weight and sufficiency of the evidence.").  In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'" *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).  Thus, petitioner's weight of the evidence claim is not cognizable on habeas review.[3]

2.    *Sufficiency of the Evidence*

---

[3]Respondent contends that petitioner's weight of the evidence claim is are procedurally defaulted. Because it is clear that this claim is not cognizable on habeas review,, the Court may resolve the claim on that basis without conducting a procedural default analysis.  *See Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

### a. Clearly Established Law

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam). The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326. As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of

9

bare rationality." *Coleman*, 132 S. Ct. at 2065. Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

In analyzing the sufficiency of the evidence, "[i]t is well-established that circumstantial evidence alone can be sufficient to support any burden of proof, even where, as in a matter of substantive criminal liability, the prosecution's proof must be beyond a reasonable doubt." *United States v. Jones*, 31 F.3d 1304, 1316 (4th Cir. 1994); *see also*, *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984). "[C]ircumstantial evidence is intrinsically as probative as direct evidence even where the conviction rests solely upon circumstantial evidence." *United States v. Taylor*, 599 F.2d 832, 838 (8th Cir. 1979) (citing *Holland v. United States*, 348 U.S. 121 (1954)). As the Supreme Court explained in *Holland*:

> Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

*Holland*, 348 U.S. at 140.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "under

*Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16). Petitioner challenges the sufficiency of the evidence on his murder conviction. Under Michigan law, the common law crime of murder is defined as second degree murder, and is punishable by up to life imprisonment. *See* MICH. COMP. LAWS § 750.317. Second degree murder consists of four elements: (1) a death; (2) caused by an act of the defendant; (3) with malice; and (4) without lawful justification or excuse. *See People v. Smith*, 478 Mich. 64, 70, 731 N.W.2d 411, 414-15 (2007) (citing *People v. Goecke*, 457 Mich. 442, 464, 579 N.W.2d 868 (1998)). "Some evidence must be presented regarding each element of the crime or from which those elements may be inferred." *People v. Goecke*, 457 Mich. 442, 470, 579 N.W.2d 868 (1998) (citing *People v. Doss*, 406 Mich. 90, 100-01, 276 N.W.2d 9 (1979)). In order to show malice, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W.2d 304, 319-20 (1980). The prosecution may establish the elements of a crime through circumstantial evidence that creates a reasonable inference that an element is satisfied. *See Kelly v. Jackson*, 353 F. Supp.2d. 887, 891 (E.D. Mich. 2005) (citing *People. v. Goecke*, 457 Mich. 442, 463-64, 579 N.W.2d 868 (1998)).

Second degree murder is elevated to first degree murder by the showing of some additional element. Relevant here, first degree murder is a second degree murder "committed in the

perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a major controlled substance offense, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping."  MICH. COMP. LAWS § 750.316(1)(b).  Thus, the elements of first degree felony murder are: "(1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result; (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in M.C.L. § 750.316." *People v. Turner*, 213 Mich. App. 558, 556, 540 N.W.2d 728, 732 (1995) (per curiam), *overruled in part on other grounds by People v. Mass*, 464 Mich. 615, 628 N.W.2d 540 (2001).

Further, MICH. COMP. LAWS § 767.39 abolished the common law distinction between aiders and abettors and principals, and provides that aiders and abettors may be prosecuted and convicted as though they had directly participated in the crime. *See People v. Palmer*, 392 Mich. 370, 378, 220 N.W.2d 393, 396 (1974).  Aiding and abetting under Michigan law requires proof of three elements: (1) commission of the underlying crime either by the defendant or some other person; (2) acts or encouragement by the defendant which aided or assisted the commission of the crime; and (3) intent on the part of the defendant to commit the crime or knowledge by the defendant that the principal intended to commit the crime at the time aid or encouragement was given. *See People v. Acosta*, 153 Mich. App. 504, 511-12, 396 N.W.2d 463, 467 (1986) (per curiam).  Thus, "[t]o prove felony murder on an aiding and abetting theory, the prosecution must show that the defendant (1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily

harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony." *People v. Riley*, 468 Mich. 135, 140, 659 N.W.2d 611, 614 (2003).

*b. Analysis*

Petitioner contends that there was insufficient evidence to prove that he acted with malice aforethought. The Michigan Court of Appeals rejected this claim, reasoning:

> Lyles testified that she was reluctant to contact Harper, but that defendant Dothard told her four or five times to call him to set up the planned robbery. Fullwood similarly testified that defendant Dothard was involved in planning the robbery. The testimony of Lyles and Fullwood also indicated that defendant Dothard participated in the offense by entering Harper's house and threatening him with a gun. According to Fullwood, Wade became angry at one point when he discovered that Harper had lied about not having any money, so Wade fired his gun at the floor. Lyles also testified that defendant Dothard said to Harper, "I know you," just before Wade and defendant Dothard took Harper to the basement, and that both Wade and defendant Dothard said something to Harper before taking him to the basement as guns were pointed at his back. Lyles heard all of the men arguing while they were in the basement. According to Fullwood, Wade came upstairs to ask if they should shoot Harper and Lyles told him to do so because Harper knew her. Harper was thereafter shot while in the basement, and Wade admitted shooting him. There was also testimony that defendant Dothard helped collect items from Harper's home and that he received some of the stolen property.
>
> Although Wade testified that defendant Dothard was not involved in the offense, the testimony of both Lyles and Fullwood was sufficient to allow the jury to find that defendant Dothard was a participant. With regard to defendant Dothard's malice, the testimony of Lyles and Fullwood that defendant Dothard was involved in the planning of the offense, went to Harper's house armed with a gun, fully participated in the robbery, and, after observing Wade fire his gun inside the house, assisted Wade in bringing Harper to the basement where Harper was eventually shot, viewed in a light most favorable to the prosecution, was sufficient to enable the jury to find that defendant Dothard, at a minimum, acted in wanton and willful disregard of the likelihood that death or great bodily harm was a probable result of the group's concerted conduct. Thus, there was sufficient evidence of malice to support defendant Dothard's felony-murder conviction.

*Grant*, 2012 WL 2402053, at *6-*7. With respect to petitioner's and co-defendant Grant's attacks on Lyle's credibility, the court of appeals explained:

13

While Lyles's credibility was certainly an issue, all of the witnesses in the case had credibility problems. However, Lyles's account was not so implausible or incredible that it could not be believed. Although Lyles stated that she had memory problems because of her drug use, she testified that she knew what was happening on the night of the offense. The evidence showed that despite Lyle's admitted drug and alcohol use, she was able to successfully contact Harper and arrange to meet him, and that Lyles accompanied Fullwood to Harper's house where they stayed for approximately an hour before Wade and defendant Dothard entered the house at gunpoint. The testimony describing Lyle's involvement in the execution of the planned offense allowed the jury to find that she was not so impaired that she was unable to recall the events of that evening.

*Id*. at *3. The Court should conclude that the Michigan Court of Appeals's rejection of petitioner's claim was reasonable.

Lyles's testimony, if believed by the jury, was sufficient to establish that petitioner was a willing and active participant in the home invasion and robbery. Lyles's testimony also was sufficient to establish that petitioner knew that both he and Wade were armed, that Wade had already fired his gun, and that Wade had asked Lyles if they should shoot the victim after petitioner and Wade had taken the victim to the basement. This evidence was sufficient for the jury to conclude beyond a reasonable doubt that, at a minimum, petitioner "participate[d] in [the] crime with knowledge of [Wade's] intent to kill or to cause great bodily harm," and thus "act[ed] with wanton and willful disregard sufficient to support a finding of malice." *Riley*, 468 Mich. at 141, 659 N.W.2d at 614 (internal quotation omitted); *see Meade v. Lavigne*, 256 F. Supp. 2d 849, 858 (E.D. Mich. 2003) (Tarnow, J.), *aff'd*, 104 Fed. Appx. 461 (6th Cir. 2004); *People v. Bulls*, 262 Mich. App. 618, 626-27, 687 N.W.2d 159, 165 (2004); *Turner*, 213 Mich. App. at 572-73, 540 N.W.2d at 735. To the extent that petitioner argues that the evidence was insufficient because Wade testified that petitioner was not involved, or because Lyles was not credible, he is not entitled to habeas relief. As noted above, in reviewing the sufficiency of the evidence this Court does not make credibility

14

determinations, nor does it reweigh the evidence.  A reviewing court may reverse a jury's credibility determinations only where the testimony is incredible as a matter of law, "such as where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all."  *United States v. Radziszewski*, 474 F.3d 480, 485 (7th Cir. 2007) (internal quotation omitted); *accord United States v. Smith*, 606 F.3d 1270, 1281 (10th Cir. 2010); *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009); *United States v. Gadison*, 8 F.3d 186, 190 (5th Cir. 1993).  Here, Lyles's testimony was not impossible based on her ability to observe or the laws of nature.  The fact that her testimony may have been inconsistent with Wade's testimony does not render the testimony incredible on its face.  *See United States v. Patterson*, 23 F.3d 1239, 1244 n.5 (7th Cir. 1994).

In short, as the Supreme Court explained the *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court, *Coleman*, 132 S. Ct. at 2064, nor does it permit this Court to reweigh the conflicts in the evidence or assess the credibility of the witnesses. The trier of fact was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of the prosecution.  In light of Lyles's and Fullwood's testimony it cannot be said that the jury's verdict was "so insupportable as to fall below the threshold of bare rationality."  *Coleman*, 132 S. Ct. at 2065.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Evidentiary Claim (Claim IV)*

In his fourth claim, petitioner contends that he was denied a fair trial by the introduction of evidence that Wade had pleaded guilty to another murder and had been involved in a hostage situation in which he shot at the police.  The Court should conclude that petitioner is not entitled to

15

habeas relief on this claim.

     1.     *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude.  *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987).  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law.  State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution."  *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."  *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).  In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy."  *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only

16

if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2.      *Analysis*

As explained by the Michigan Court of Appeals, "[o]n cross-examination, the prosecutor was permitted to elicit from Wade that in addition to pleading guilty of second-degree murder in this case, he also pleaded guilty to second-degree murder in two other cases and would be required to serve a minimum sentence of 40 years for second-degree murder and a five-year term for a second felony-firearm conviction." *Grant*, 2012 WL 2402053, at *9. Wade also testified that he believed he would be eligible for earlier release based on the earning of good time credits, after which the prosecutor questioned Wade about a incident in which he shot at the police. *See id.* Petitioner argues that these convictions were not properly admitted for impeachment purposes under MICH. R. EVID. 609, because they did not involve an element of theft or dishonesty. The Michigan Court of Appeals rejected this claim, concluding that although the convictions were not admissible under Rule 609, they were independently admissible to show Wade's bias and motivation in testifying. The court explained:

> In this case, Wade's additional plea-based murder convictions arose from a global plea agreement that included this case as well. Thus, they were relevant to the jury's full understanding of Wade's agreement in this case. Wade's plea agreement was also relevant to his possible bias and motivation for accepting ful responsibility for Harper's murder and for testifying that Dothard was not involved in the offense, contrary to the testimony of other witnesses. As the prosecutor pointed out, Wade's testimony concerning his criminal convictions and lengthy imprisonment showed that he had nothing to lose by accepting sole responsibility for Harper's murder. In addition, because Wade had volunteered that he believed that he would qualify for good-time credits to make him eligible for release from prison before fully serving his minimum term, he opened the door to the prosecutor's questioning about other crimes to rebut the implication that he was a likely candidate for early release.

17

*Grant*, 2012 WL 2402053, at *9.  This determination was reasonable.

The fact that the evidence was inadmissible for impeachment purposes under Rule 609 does not mean that the evidence was improperly admitted.  In both the state and federal courts, "[i]t remains within the trial court's discretion to admit at any time during the course of trial evidence of prior convictions, notwithstanding a ruling to exclude such evidence under [Rule] 609, if it is being offered for some proper purpose other than to impeach a [witness's] credibility in general." *People v. Taylor*, 422 Mich. 407, 414, 373 N.W.2d 579, 582 (1985); *see also*, *United States v. Abel*, 469 U.S. 45, 56 (1984) ("[T]here is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible; quite the contrary is the case.").  Here, Wade's prior convictions and the lengthy prison term arising from those convictions were relevant to show that he had little to lose by exonerating petitioner and accepting full blame for the murder of Harper.  *See Bellew v. Gunn*, 424 F. Supp. 31, 41 (N.D. Cal. 1976); *cf. Awon v. United States*, 308 F.3d 133, 141 (1st Cir. 2002) (noting that affidavit of already convicted co-defendant was not credible because he "had nothing to lose by exonerating" the defendant); *United States v. Freeman*, 77 F.3d 812, 817 (5th Cir. 1996) (same).

Moreover, even if Wade's convictions were improperly admitted for impeachment purposes as a matter of state law, petitioner cannot show that the admission of this evidence violated his right to a fair trial.  Petitioner can point to no clearly established federal law, as determined by the Supreme Court, which prohibits the impeachment of a witness by any prior felony conviction.  *See Reyes v. Adams*, No. CV 06-3621, 2010 WL 2557528, at *13 (Apr. 22, 2010), *magistrate judge's report adopted*, 2010 WL 2557676 (C.D. Cal. June 21, 2010).  *See generally*, *Maldonado v. Wilson*, 416 F.3d 470, 477-78 (6th Cir. 2005) (improper admission of voice-stress analysis evidence not

18

unreasonable under AEDPA standard where no Supreme Court precedent established admission of polygraph or similar evidence as a violation of due process); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (admission of prior bad acts evidence did not violate clearly established federal law because "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.").  On the contrary, although Michigan Rule of Evidence 609 permits impeachment only by prior convictions for crimes which involve an element of theft or dishonesty, Federal Rule of Evidence 609 is not so limited, and allows introduction of any felony conviction for purposes of impeachment.  *See* Fed. R. Evid. 609(a)(1); *see also*, *United States v. Hamilton*, 48 F.3d 149, 153 (5th Cir. 1995) (emphasis added) ("Rule 609 of the Federal Rules of Evidence permits a witness to be questioned about *any* felony conviction or any conviction of a crime [that is not a felony] involving 'dishonesty or false statement.'); *United States v. Papia*, 560 F.2d 827, 845 n.10 (7th Cir. 1977).  Petitioner has cited, and I have found, no case suggesting that this rule (or state analogues) permitting impeachment of a witness by any prior conviction violates the Due Process Clause.  *See, e.g.*, *Caldwell v. Thaler*, 770 F. Supp. 2d 849, 865-66 (S.D. Tex. 2011) (petitioner not denied a fair trial by introduction of petitioner's prior conviction for controlled substance offense under Texas version of Rule 609). Because evidence of Wade's convictions was properly admitted, and because in any event the admission of this evidence did not violate any clearly established federal law, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Counsel Claims (Claims II and III)*

Petitioner next raises two claims relating to his trial counsel.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

19

1.    *Attorney-Client Breakdown (Claim II)*

In Claim II, petitioner contends that the trial court erred in failing to adequately inquire into a breakdown in the attorney-client relationship, and in failing to appoint substitute counsel.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

a.  *Clearly Established Law*

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. CONST. amend. VI.  The Sixth Amendment right to counsel contemplates a corollary right to the counsel of one's choice, and thus a criminal defendant who has the desire and the financial means to retain his own counsel generally "'should be afforded a fair opportunity to secure counsel of his choice.'" *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993) (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)).  However, as the Supreme Court has explained, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).  Further, the right to counsel of one's choice is not absolute, and "is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988).  Importantly, the right to counsel of one's choice "must be balanced against the court's authority to control its own docket, and a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court." *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988); *see also*, *Gonzalez-Lopez*, 548 U.S. at 151-52; *Lockett v. Arn*, 740 F.2d 407, 413 (6th Cir. 1984) ("Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of that right must be balanced against the court's authority to control its docket.").  Further, as the Supreme Court has explained, "while the

20

right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. Thus, "in evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'" *Id*. (quoting *United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984). Because an indigent defendant has no absolute right to appointed counsel of his choice, and because the focus of the Sixth Amendment inquiry is on effective advocacy, "[a] criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991); *accord United States v. Blaze*, 143 F.3d 585, 593 (10th Cir. 1998); *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990).

### b.  Analysis

On the first day of trial, the following exchange occurred between defense counsel and the trial court:

> MS. REED:  Also, Mr. Dothard's family had advised me earlier that they had contacted the Court about removing me from the case. I came in last week and asked if the Court was removing me, and what happened with that. And I was advised that nothing had happened at this point. I understand now that his family wants to talk to you I assume about removing me from the case. I'm just let [sic] the Court know that they're here. I don't know what Mr. Dothard is doing or what.

> THE COURT:  Today is the date and time set for trial. Ms. Reed has tried thousands of cases in this court. This is the first I've heard of something on the eve of trial. So get your subpoenas out and we're going to pick a jury in just a few minutes.

21

Trial Tr., dated 4/12/10, at 3-4.  Petitioner contends that the court erred in failing to conduct an inquiry into his dissatisfaction with counsel or failing to appoint substitute counsel.  The Michigan Court of Appeals rejected this claim, reasoning:

> [T]here is no indication that defendant Dothard joined in [his family's] request, and there is no record of defendant Dothard ever personally expressing dissatisfaction with defense counsel or requesting new counsel.  Absent any claim of dissatisfaction or request for new counsel by defendant Dothard, the trial court was not obligated to inquire into the status of the attorney-client relationship, and there was no basis for appointing new counsel.

*Grant*, 2012 WL 2402053, at *8.  This determination was reasonable.

Here, petitioner failed to establish good cause for substitution of counsel, "such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant," *Smith*, 923 F.2d at 1320, for the simple reason that petitioner himself never expressed any dissatisfaction with counsel.  Because petitioner himself did not express any dissatisfaction with counsel or assert a conflict or breakdown in communication, the trial court had no duty to inquire into the status of the attorney-client relationship or to appoint substitute counsel.  *See United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001) (trial court did not error in denying defense counsel's motion to withdraw where "[d]efendant himself never moved to substitute counsel."); *United States v. Iles*, 906 F.2d 1122, 1131 (6th Cir. 1990) ("The need for an inquiry will not be recognized, however, where the defendant has not evidenced his dissatisfaction or wish to remove his appointed counsel.").  Even now, petitioner can point to nothing to show an irreconcilable conflict or complete breakdown in communication.  In his brief, he makes only a conclusory assertion that there was a breakdown in the attorney-client relationship.  To the extent that petitioner's problems with counsel amounted to no more than a disagreement with the tactics and strategy counsel chose to adopt, this is insufficient to constitute the type of complete breakdown

22

justifying appointment of substitute counsel. *See United States v. Carillo*, 161 Fed. Appx. 790, 793 (10th Cir. 2006); *cf. Morris v. Slappy*, 461 U.S. 1, 13-14 (1983) (there is no constitutional right to a "meaningful attorney-client relationship.").

Further, even assuming that the trial court erred by not conducting an inquiry or substituting counsel, petitioner's claim fails because any error was harmless. As noted above, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably by represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. Thus, the courts that have considered the issue have concluded that "[u]nless [a defendant] can establish an ineffective assistance claim under *Strickland v. Washington* . . . any error in the [trial] court's disposition of [the defendant's] motion for appointment of substitute counsel is harmless." *United States v. Graham*, 91 F.3d 213, 217 (D.C. Cir. 1996) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)); *see also*, *United States v. Calderon*, 127 F.2d 1314, 1343 (11th Cir. 1997); *United States v. Zillges*, 978 F.2d 369, 372-73 (7th Cir. 1992); *Bowie v. Renico*, No. 00-10013, 2002 WL 31749162, at *11 (E.D. Mich. Nov. 6, 2002) (Lawson, J.); *Stephens v. Costello*, 55 F. Supp. 2d 163, 172 (W.D.N.Y. 1999). As the Supreme Court has explained, "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). Because, as explained below, petitioner was not deprived of the effective assistance of appellate counsel, he has "no cognizable complaint."[4]

---

[4]This conclusion is not altered by the Supreme Court's decision in *United States v. Gonzalez-Lopez*, *supra*. In that case, the Court held that a defendant who has been denied his Sixth Amendment right to counsel of his choice need not demonstrate that his actual trial attorney was defective, or that he was prejudiced by counsel's deficient performance. *See Gonzalez-Lopez*, 548 U.S. at 146. Further, the Court held that a denial of the right to counsel of one's choice is a structural error, and thus harmless error review does not apply to such a denial. *See id.* at 150-51. *Gonzalez-Lopez* is inapplicable here. That case

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim..

> 2.      *Ineffective Assistance of Counsel (Claim III)*

In his third claim, petitioner contends that trial counsel was ineffective for failing to object to the prosecutor eliciting from prosecution witnesses that their plea deals with the prosecutor required them to provide truthful testimony. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

> a.  *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be

---

involved a defendant who had retained counsel to represent him but was denied the right to have his retained counsel appear on his behalf. Nothing in that decision purported to alter the rules applicable to an indigent defendant's right to appointed counsel of his choice. On the contrary, the Court explicitly reaffirmed the *Wheat* and *Caplin & Drysdale* conclusions that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Id.* at 151 (citing *Caplin & Drysdale*, 491 U.S. at 624; *Wheat*, 486 U.S. at 159). Thus, *Gonzales-Lopez* does not call into question the Court's prior observation that "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale*, 491 U.S. at 624; *see Harlan v. Lafler*, No. 2:09-CV-14524, 2011 WL 6131091, at *7 (E.D. Mich. Dec. 8, 2011) (Borman, J.); *Johnson v. Balcarcel*, No. 07-12783, 2009 WL 5171812, at *2 n.2, *8 (E.D. Mich. Dec. 22, 2009) (Duggan, J., adopting report of Komives, M.J.); *Garcia v. Quarterman*, No. H-06-0504, 2006 WL 2413714, at *14 (S.D. Tex. Aug. 18, 2006).

followed." *Id.*  With respect to the performance prong of the *Strickland* test, a strong presumption

exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See*

*id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must

overcome the presumption that, under the circumstances, the challenged action 'might be considered

sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize

that counsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment."  *Id*. at 690.  With respect to the

prejudice prong, the reviewing court must determine, based on the totality of the evidence before

the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would

have had a reasonable doubt respecting guilt."  *Id*. at 695.  It is petitioner's burden to establish the

elements of his ineffective assistance of counsel claim.  *See United States v. Pierce*, 63 F.3d 818,

833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v.*

*Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is

difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review

a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v.*
> *Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An
> ineffective-assistance claim can function as a way to escape rules of waiver and
> forfeiture and raise issues not presented at trial, and so the Strickland standard must
> be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the
> integrity of the very adversary process the right to counsel is meant to serve.
> *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the
> standard for judging counsel's representation is a most deferential one. Unlike a later
> reviewing court, the attorney observed the relevant proceedings, knew of materials
> outside the record, and interacted with the client, with opposing counsel, and with
> the judge. It is "all too tempting" to "second-guess counsel's assistance after
> conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*,

25

535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

### b. Analysis

At trial, the prosecutor elicited from Fullwood that part of her plea agreement was that she provide truthful testimony. Petitioner contends that this constituted improper vouching, to which defense counsel should have objected.[5]   The Michigan Court of Appeals rejected this claim, concluding that there was no improper vouching, and thus that counsel did not err in failing to object.  The court reasoned:

A prosecutor may not vouch for the credibility of his witnesses by suggesting that he has some special knowledge of the witnesses' truthfulness. However, mere reference to a plea agreement that contains a promise of truthfulness does not convey a message that the prosecutor has some special knowledge that any testimony the witness provides will be truthful.  Therefore, such questioning is not improper.  In this case, the prosecutor did no more than elicit that Fullwood's plea agreement required her to provide truthful testimony.  The prosecutor did not suggest that he had some special knowledge, unknown to the jury, that Fullwood's testimony was indeed truthful.  Accordingly, there was no error and defense counsel was not

---

[5]Petitioner also asserts that the prosecutor elicited this same testimony from Lyles, but the court of appeals correctly noted that this testimony was not elicited by the prosecutor, but by defense counsel on cross-examination of Lyles.

ineffective for failing to object.

*Grant*, 2012 WL 2402053, at *8. This determination was reasonable.

In analyzing petitioner's claim, the Michigan Court of Appeals applied the correct standard for determining the propriety of the prosecutor's conduct. As the court of appeals recognized, improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also*, *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).[6] And, as the court of appeals correctly concluded, here the prosecutor neither indicated a personal belief in Fullwood's credibility, nor suggested that he had special knowledge of facts not in front of the jury. The prosecutor did not highlight the matter during opening statement or closing argument, nor did he make any other suggestion that amounted to improper vouching. Rather, the prosecutor did no more than place before the jury the terms of Fullwood's plea agreement. Although such testimony coupled with additional argument from the prosecutor highlighting the plea agreement or other impermissible vouching may be improper, *see United States v. Carroll*, 26 F.3d 1380, 1389 (6th Cir. 2000) (prosecutor emphasized that witness "would be in jeopardy" if he were not testifying truthfully, "blatantly implied that the [witnesses'] plea agreement ensured that the witnesses were truthful," and "implied to the jury that the government and the court were satisfied that the witnesses were truthful."), such testimony standing alone does not constitute impermissible vouching. *See*

---

[6]Some cases referring to only the first type of comment as "vouching" and describe the second type of comment as "bolstering." *See Francis*, 170 F.3d at 551.

27

*United States v. Reid*, 625 F.3d 977, 984 (6th Cir. 2010) (distinguishing *Carroll* and concluding that "[b]ecause the prosecutor limited his questions and comments to th[e] facts [of the plea agreements] and did not imply any special knowledge regarding the credibility or truthfulness of the cooperating witnesses, the prosecutor did not improperly vouch for the witnesses."); *United States v. Presley*, 349 Fed. Appx. 22, 26-27 (6th Cir. 2009) (distinguishing *Carroll* and finding no improper vouching where the prosecutor "simply mentioned the existence of the plea agreements" with the witness but "did not imply that these agreements ensured that they were being truthful."); *United States v. Trujillo*, 376 F.3d 593, 608-09 (6th Cir. 2004); *United States v. Tocco*, 200 F.3d 401, 416-17 (6th Cir. 2000) (introduction of plea agreement which contained requirement of truthful testimony, standing alone, was not improper; distinguishing *Carroll*).  Thus, the Michigan Court of Appeals could reasonably conclude that the prosecutor did not improperly vouch for Fullwood's credibility by eliciting the terms of her plea deal.  And because it is well established that counsel cannot be deemed ineffective for failing to raise a meritless objection, *see Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993), the court of appeals was equally reasonable in concluding that counsel was not ineffective for failing to object.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Evidentiary Hearing*

In his combined reply and motion for an evidentiary hearing, petitioner seeks an evidentiary hearing to develop evidence relating to various claims that are not asserted in the petition.  The Court should conclude that petitioner is not entitled to an evidentiary hearing.

1.      *Legal Standard*

28

In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) is a hearing permitted under 28 U.S.C. § 2254(e)(2). Pursuant to 28 U.S.C. § 2254(e)(2), "[i]f the applicant has failed to develop the factual basis of the a claim in State court proceedings, the court shall not hold an evidentiary hearing on a claim unless" one of two exceptions is met. 28 U.S.C. § 2254(e)(2). An evidentiary hearing is not permissible if the petitioner has "failed to develop the factual basis" of his ineffective assistance claim in the state courts. In *Michael Williams v. Taylor*, 529 U.S. 420 (2000),[7] the Court explained that Congress' use of the term "'failed to develop' implies some lack of diligence[.]" *Id*. at 430. Thus, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id*. at 432.

Even where a hearing is permitted under § 2254(e)(2), a petitioner must show that an evidentiary hearing is necessary under Rule 8. In deciding whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). As the Supreme Court has explained:

---

[7]This case should not be confused with the *Williams v. Taylor* case discussed in part C, *supra*, in which the Court explained the standard of review under § 2254(d). Although both cases bear the same caption and were decided on the same date, the petitioners differed in the two cases. For clarity, I refer to the case discussing § 2254(e)(2) by the petitioner's full name–"Michael Williams"–rather than just by "Williams" as is the ordinary citation convention. *See Watkins v. Miller*, 92 F. Supp. 2d 824, 828 n.1 (S.D. Ind. 2000) (taking same approach).

In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.

It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations and footnote omitted).

2.      *Analysis*

Here, petitioner cannot show that an evidentiary hearing is necessary under Rule 8, even if one were otherwise permitted under § 2254(e)(2).  Petitioner contends that an evidentiary hearing is necessary to develop evidence to support the following claims: (1) ineffective assistance of appellate counsel in failing to raise a claim that trial counsel was ineffective for failing to challenge an insufficient theory of murder submitted to the jury; (2) ineffective assistance of appellate counsel for failing to raise a claim that trial counsel was ineffective for failing to object to the defective jury oath; (3) a claim relating to evidence of the time of death; (4) a challenge to the jury instructions; and (5) a double jeopardy claim.  An evidentiary hearing could not advance these claims, for several reasons.  First, and most fundamentally, these claims are not before the Court.  These claims were not raised in petitioner's habeas application, and petitioner has not sought leave to amend the petition.  Nor were these claims raised in state court, and thus they have not been exhausted as required by 28 U.S.C. § 2254(b)(1).  As I have recently explained in similar circumstances,

These claims are "not properly before the Court, as [they] ha[ve] not been exhausted in the state courts nor [were they] raised in petitioner's habeas application." *Hamilton v. Romanowski*, No. 5:10-CV-14392, 2012 WL 2224450, at *13 (May 7, 2012) (Komives, M.J.), *magistrate judge's report adopted*, 2012 WL 2198790 (E.D. Mich. June 15, 2012) (O'Meara, J.).  "[A] traverse or reply to an answer to a petition for writ of habeas corpus is not the proper pleading for a habeas petitioner to raise

additional grounds for relief.  A court cannot consider new issues raised in a traverse or reply to the State's answer." *Burns v. Lafler*, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004) (Gadola, J.) (citations omitted) (citing *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994); *Lewis v. Witek*, 927 F. Supp. 1288, 1291 n.2 (C.D. Cal. 1996)); *see also*, *Murphy v. Ohio*, 551 F.3d 485, 502 (6th Cir. 2009) ("We agree with the State's assessment that Murphy's disclosure claim is not properly before this Court because he first presented it in his traverse and, thus, failed to exhaust the claim in state court.").

*Patterson v. Warren*, No. 2:12-CV-15658, 2014 WL 3767806, at *31 (E.D. Mich. July 31, 2014) (Roberts, J., adopting report of Komives, M.J.).

Moreover, even if these claims are properly before the Court, they fail as a matter of law on the existing record, without further need for factual development.  Petitioner contends that it was improper to submit to the jury the felony murder charge on both a principal and aiding or abetting theory because there was insufficient evidence to show that he was a principal, and that his trial and appellate attorneys were ineffective for failing to pursue this claim.  Even if there was not sufficient evidence to support instructing the jury on petitioner's guilt as a principal, petitioner cannot show that he was prejudiced by the inclusion of this charge.  The prosecutor did not argue that petitioner was guilty as a principal.  On the contrary, the prosecutor explicitly argued that "this was a matter of aiding and abetting, people aiding and abetting in this crime.  There is no dispute whatsoever that Dione Wade is the person who pulled the trigger."  Trial Tr., dated 4/19/10, at 8; *see also*, *id*. at 8-9 ("So let's just get that out right away that Dione Wade, there's no questions he's the shooter.  So why are we here for these other people.  Because what the evidence has shown in this case is that together all of these people planned this crime, they executed it together."); *id*. at 9 (discussing aiding and abetting law); *id*. at 26 (asking jury to listen carefully to the judge's instructions, "always bearing in mind that this is an aiding and abetting theory."); *id*. at 27 ("I absolutely am asking you to convict these people as aiders and abettors or convict Mr. Dothard as an aider and abettor in this

31

crime . . . .").  The trial was essentially a credibility contest between Wade, who testified that

petitioner had no role in the crimes, and Lyles and Fullwood, who testified that petitioner was

intimately involved in the planning and execution of the crime.  No one testified or argued that

petitioner was guilt as a principal, and the inclusion of that charge could not have prejudiced

petitioner.  Either the jury believed Wade, in which case it would have acquitted petitioner under

both a principal and aiding and abetting theory, or it believed Lyles and Fullwood (as it did), and

convicted him as an aider and abettor.  Thus, petitioner cannot establish that he was prejudiced by

either trial or appellate counsel's failure to raise this claim, and an evidentiary hearing is not

necessary.

> Petitioner also contends that trial and appellate counsel were ineffective for failing to object

to a defective oath given to the jury.  After the jury had been impaneled, it was given the following

oath:

> > Do you solemnly swear that you will well and truly try in true deliverance to make
> > between the People of this state and the defendant at bar whom you shall have in
> > charge according to the evidence and laws of this state, so help you God?

Trial Tr., dated 4/12/10, at 133.  This oath tracks the oath set forth in MICH COMP. LAWS § 768.14,

but differs from the oath provided for in MICH. CT. R. 2.511(H).  As the Michigan courts have held,

however, even if the form of the oath provided for in Rule 2.511 controls over the statutory form

provided in § 768.14, the giving of the latter rather than the former does not provide a basis for

reversing a defendant's conviction because the statutory oath "sufficiently serve[s] to obtain a

promise that jurors [will] abide by the law, pay attention to the evidence and the credibility of

witnesses, and conduct themselves appropriately."  *People v. Lott*, No. 224944, 2002 WL 31082165,

at *2 (Mich. Ct. App. Sept. 17, 2002).  Thus, petitioner cannot show that he was prejudiced by trial

counsel's failure to object to the form of the oath given to the jury or by appellate counsel's failure to raise this claim on appeal. *See Calloway v. McQuiggin*, No. 2:11-CV-10005, 2013 WL 4784412, at *5, *13 (E.D. Mich. Sept. 6, 2013) (Steeh, J., adopting report of Komives, M.J.).

Petitioner next seeks an evidentiary hearing to develop a claim based on the time of death evidence. At trial, Dr. John Bechinski, an Assistant Medical Examiner, testified that an autopsy was performed on the victim on January 9, 2009, and that the victim was pronounced dead on January 8, 2009. *See* Trial Tr., dated 4/15/10, at 110. The nature of petitioner's argument with respect to this evidence is not entirely clear. Petitioner appears to argue that the prosecution was required to prove beyond a reasonable doubt that the crime occurred on January 7. This argument is without merit. It has long been established "that time is not an essential element of the crime of homicide" and thus "the time of commission of the offense" as set forth in the charging document "need not be proved" at trial. *People v. Sharac*, 209 Mich. 249, 253, 176 N.W. 431, 432 (1920) (internal quotation omitted). Nor, as petitioner appears to argue, was Dr. Bechinski's testimony improper "extrinsic evidence." "As a matter of law, clearly established Supreme Court precedent requires that a criminal defendant be afforded the right to confront the evidence and the witnesses against him, and the right to a jury that considers only the evidence presented at trial." *Doan v. Brigano*, 237 F.3d 722, 733 n.7 (6th Cir. 2001) (citing *Parker v. Gladden*, 385 U.S. 363, 364-65 (1966); *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965)), *overruled on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003); *see also*, *Fletcher v. McKee*, 355 Fed. Appx. 935, 937 (6th Cir. 2009). "Thus, under clearly established federal law, jury exposure to extrinsic evidence or other extraneous influence violates a defendant's Sixth Amendment rights, and a state court decision that conflicts with this rule may justify habeas relief under the standard set forth in the AEDPA." *Id.* (citations

33

omitted) (citing *Doan*, 237 F.3d at 736; 28 U.S.C. § 2254(d)(1)).  Dr. Bechinski's testimony, however, was not extrinsic; it was presented at trial and subject to cross-examination by petitioner's counsel.

Petitioner next contends that the jury instructions on felony murder were improper, necessitating an evidentiary hearing.  This argument is without merit.  The trial court's felony murder instruction tracked the model instruction on felony murder, *compare* Trial Tr., dated 4/19/10, at 53-54, *with* MICH. CRIM. JURY INSTRUCTIONS 2D 16.4, as did the trial court's aiding and abetting instructions, *compare* Trial Tr., dated 4/19/10, at 58-59, *with* MICH. CRIM. JURY INSTRUCTIONS 2D 8.1, 8.4, 8.5.  With respect to the aiding and abetting instructions, "Judges of this Court have repeatedly held that these instructions adequately inform the jury of all the elements of aiding and abetting liability, including the intent element."  *Crimes v. Bauman*, No. 2:09-CV-10402, 2011 WL 2784561, at *11 (June 14, 2011) (Komives, M.J.) (citing *Polk v. Trombley*, No. 2:06-CV-10568, 2007 WL 2746614, at *4 (E.D. Mich. Sept. 19, 2007) (Zatkoff, J.); *Shepherd v. Howes*, No. 05-CV-71936, 2007 WL 551601, at *7 (E.D. Mich. Feb. 20, 2007) (Cleland, J.); *Pannell v. McKee*, No. 05-71439, 2006 WL 1662805, at *9 (E.D. Mich. June 9, 2006) (Edmunds, J., adopting report of Komives, M.J.)), *magistrate judge's report adopted*, 2011 WL 2746184 (E.D. Mich. July 14, 2011) (Battani, J.).  In short, "[t]he trial court's instructions on aiding and abetting and felony murder were identical to the Michigan Criminal Jury Instructions" and "were legally accurate."  *People v. Reed*, No. 263033, 2006 WL 3375050, at *4 (Mich. Ct. App. Nov. 21, 2006) (per curiam); *see also*, *People v. Holifield*, No. 177958, 1996 WL 33362231, at *2 (Mich. Ct. App. July 23, 1996) (per curiam).

Finally, petitioner contends that sentencing him for both the felony murder and the underlying armed robbery convictions violates his right to be free from double jeopardy.  This claim

34

is without merit.  The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V. The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense."  *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).  However, in the context of multiple punishments, the Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses.  As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . ., the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent."  *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  Thus, "even if the two statutes proscribe the same conduct, the Double Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them."  *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986).  As the Supreme Court explained, when "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."  *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).  In determining whether the Michigan legislature intended to authorize separate,

35

cumulative punishments in the circumstances present here, the Court "must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments[.]" *Brimmage*, 793 F.2d at 1015; *see also*, *Hunter*, 459 U.S. at 368.

Thus, the question is whether the Michigan Legislature intended that convictions for felony murder and the underlying predicate felony gives rise to separate criminal liability; if so, the "court's inquiry is at an end" and there is no double jeopardy violation. *Johnson*, 467 U.S at 499 n.8.  In making this determination, the Court is bound by the Michigan courts' interpretation of state law. *See Rodgers v. Bock*, 49 Fed. Appx. 596, 597 (6th Cir. 2002); *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).  In *People v. Ream*, 481 Mich. 223, 750 N.W.2d 536 (2008), the Michigan Supreme Court concluded that the Michigan legislature intended to authorize multiple punishments upon conviction for first degree felony murder and the underlying felony.  Because the Michigan Supreme Court has made this determination of the Michigan legislature's intent, this "court's inquiry is at an end" and there is no double jeopardy violation. *Johnson*, 467 U.S at 499 n.8.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.  *See Berry v. Capello*, No. 2:10-CV-11398, 2012 WL 4450049, at *8 (E.D. Mich. Sept. 26, 2012) (Roberts, J.).

In short, petitioner's claims set forth in his reply are not properly before the Court because they were raised in neither the state courts nor in petitioner's habeas application.  Moreover, each of the claims fails as a matter of law, and requires no further factual development.  Accordingly, the Court should conclude that petitioner is not entitled to either an evidentiary hearing or habeas relief on the claims raised in his motion for evidentiary hearing.

H.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

36

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

>   2.   *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  Lyles's and Fullwood's testimony, if believed by the jury, was more than sufficient to prove that petitioner aided and abetted the murder of Harper.  Because this Court may not reweigh the credibility of the witnesses and must accord substantial deference to the jury's findings, the resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable.  With respect to petitioner's evidentiary claim, evidence of Wade's prior convictions was properly admitted to show his motivation in testifying, and in any event no clearly established law prohibits impeaching a witness with any prior felony conviction.  Thus, the resolution of this claim is not reasonably debatable. Because petitioner never expressed dissatisfaction with appointed counsel or requested substitute counsel, the resolution of petitioner's substitute counsel claim is not reasonably debatable.  And because the prosecutor did not improperly vouch for the credibility of the witnesses, the resolution

of petitioner's ineffective assistance claim based on counsel's failure to object is not reasonably debatable. Finally, for the reasons explained above, the resolution of the claims raised in petitioner's motion for evidentiary hearing is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

I.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: September 9, 2014                    s/Paul J. Komives
                                            PAUL J. KOMIVES
                                            UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on September 9, 2014, electronically and/or by U.S. Mail.

                                            s/Michael Williams
                                            Case Manager for the
                                            Honorable Paul J. Komives